In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00414-CV

_____

**LAUREN MARTYNUIK ROBINSON, Appellant**

**V.**

**WILBUR HAH, Appellee**

_____

**On Appeal from the 260th District Court**
**Orange County, Texas**
**Trial Cause No. D220288-C**

_____

**MEMORANDUM OPINION**

In this interlocutory appeal, we are asked to decide the applicability of the Texas Citizens' Participation Act (TCPA) to multiple causes of action arising from a patient's social media postings made about her physician. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011. The trial court failed to rule on Appellant Lauren Martynuik Robinson's TCPA Motion to Dismiss Appellee Wilbur Hah's claims for defamation, business disparagement, invasion of privacy, breach of contract, and

injunctive relief within the statutory time frame, and the Motion was denied by operation of law.[1] *See id.* §§ 27.005(a), 27.008(a). In twelve issues, Robinson contends the trial court erred by implicitly denying her TCPA Motion to Dismiss because: (1) the TCPA applies to Hah's allegations made against her; (2) once the burden of proof shifted, Hah failed to present clear and specific evidence establishing a prima facie case for each of his claims; and (3) even if he did establish a prima facie case, she established affirmative defenses for those claims. For the reasons discussed below, we will reverse the trial court's denial of Robinson's TCPA Motion to Dismiss and remand for proceedings consistent with this opinion.

## I. Background

In 2022, Robinson approached Hah, a board-certified cosmetic surgeon, to perform a breast augmentation on her. As part of the preoperative process, Robinson and Hah signed a "Contract of Reasonable Expectations." In that document, Robinson acknowledged that she was undergoing an elective procedure that was not medically necessary and should not have unrealistic expectations. The document also contained a provision addressing "social media and online content" that stated, "I agree not to post any defamatory, derogatory, mean spirited, or negative

---

[1] Hah's attorney filed a letter suggesting Robinson died after the parties filed their appellate briefs. Since Robinson passed away after the trial court's judgment but before this Court's final disposition, we will proceed to adjudicate the appeal as if all parties were alive. *See* Tex. R. App. P. 7.1(a)(1).

2

comments, reviews that is [sic] designed to damage the online reputation regarding Dr. Hah, Dr. Chen-Hah or Beauty MDs, LLC team based on my perception of not having my cosmetic outcome expectations met."

Hah alleged that after Robinson underwent surgery, she and several other patients began posting on social media about their experience with Hah. In August 2022, Hah sued Robinson and three other patients in separate lawsuits. He alleged that Robinson "contractually agreed[] to refrain . . . from posting false, defamatory, derogatory, mean-spirited or negative comments or reviews on social media designed to damage the Plaintiff's reputation or livelihood, or to interfere with Plaintiff's business relations with other patients." Hah further alleged he provided Robinson "with informed, elective cosmetic services within such reasonable expectations and without any violation of the standard of care." Hah also claimed that in "direct violation of Defendant's agreement," Robinson "published defamatory, derogatory, mean-spirited, or negative comments or reviews on social media[.]" He specifically claimed that Robinson "published in a website labeled 'Botched Cosmetic Surgeries in Orange Texas' and 'Local Failed Cosmetic Surgeries' false, defamatory, derogatory, mean-spirited and negative materials on social media, intentionally, and with malice, designed to damage" his livelihood or reputation and interfere with his business relations with other patients, and that

3

"Plaintiff is the only cosmetic surgeon in Orange, Texas." Hah asserted claims for injunctive relief, breach of contract, defamation, invasion of privacy, and business disparagement.

In her Original Answer, Robinson asserted a general denial and raised the following affirmative defenses: 1) there is a lack of consideration or failure of consideration for the contract; 2) Robinson's statements about Hah were true; 3) any opinions Robinson gave about Hah are unactionable and do not support a claim for defamation or disparagement; and 4) Robinson's statements are protected speech and an exercise of her right of association and are constitutionally protected by the TCPA. In her Amended Answer, Robinson added two other affirmative defenses: 1) that the contract was illegal or violates public policy; and 2) statements made by a patient regarding their treatment by a physician and published for others who may become patients are privileged and cannot be made the basis of a claim for defamation.

Robinson filed an "Anti-SLAPP Motion to Dismiss and for Attorney's Fees" under the TCPA, claiming that Hah sued to "chill Defendant's exercise of her right to free speech[] and right of association." Robinson supported her TCPA Motion to Dismiss with her affidavit and those of the three other patients Hah sued, Ashley Melton, April Gage, and Courtney Chesson. Robinson argued the TCPA covered

Hah's claims against her, because the communications that form the basis of his claims occurred in connection with a matter of public concern–"the manner in which a physician performed surgery on his patients in the Orange County area"–so, they "relate to a matter of social or other interest to the community." She also argued that Hah's lawsuit was in response to her exercising her right of association. Specifically, she contended the supporting affidavits established that the "Facebook Group" postings Hah complained about have "a common theme and represent statements of persons with a common interest in the results of surgery, which is clearly a matter of public concern."

Robinson further asserted that after she showed the TCPA applied, Hah failed to establish by clear and specific evidence a prima facie case for each essential element of his claims and that she could establish an affirmative defense. In her affidavit, Robinson averred that she was familiar with the "Facebook Groups . . . called 'Botched Surgery in Orange Texas' and 'Locally Failed Cosmetic Surgeries'" referenced in Hah's lawsuit. She further averred that to the extent she discussed Hah's treatment of her with Melton, Gage, and Chesson, or posted materials in a Facebook Group, she did so "in an effort to collectively express, pursue or defend our common interests relating to the manner in which Dr. Hah has treated patients like myself and the other three people that he has sued." Chesson, Melton, and

5

Gage's affidavits contained identical language. Robinson later supplemented her Motion to Dismiss by attaching a corrected affidavit from Chesson in which she clarified what she had posted. Robinson later filed a "Second Supplement to Anti-SLAPP Motion to Dismiss and for Attorney's Fees" that addressed with greater particularity why this is a matter of public concern and included counsel's affidavit.

Hah filed his Response to Defendant's TCPA Motion to Dismiss and objected to any evidence offered by Robinson or the other patients he sued to the extent they are not experts and complained Robinson failed to present evidence of attorney's fees. Hah included Robinson's signed "Contract of Reasonable Expectations" and consent forms and incorporated screenshots from social media postings into the body of his Response. Hah argued the TCPA does not apply, and the 2019 amendments removed "good, product, or service in marketplace" from the definition of "matter of public concern." Hah characterized this case as "a private contract dispute to which the TCPA does not apply[.]" Hah contended that Robinson contracted with him to perform elective cosmetic services, and she agreed to "refrain from posting . . . negative comments or reviews on social media[.]" Hah alleged he performed under the contract by completing the surgery, but Robinson breached the contract. Hah alleged that Robinson posted "false, defamatory, derogatory, mean-spirited or negative comments or reviews on social media designed to damage" his reputation

6

in breach of Robinson's contract. Finally, Hah only asserted that he had shown a prima facie case for his breach of contract claim and did not address the essential elements for any other cause of action. Hah also sought attorney's fees.

Hah later filed a First Amended Response to Defendant's Motion to Dismiss. Hah supported his First Amended Response with the following: the "Contract of Reasonable Expectations;" "Commitment to Safety Consent;" "Breast Augmentation Surgery Consent;" his affidavit; his Curriculum Vitae; various screenshots; and his attorney's affidavit and billing invoices. He asserted that initially, Robinson "reported she was happy with [her] breast enhancement." During her post-operation recovery care, however, Robinson "developed an infection with a very serious complication of impending implant extrusion with severe thinning of overlying breast tissue[,]" which "required urgent removal of the breast implant" to prevent additional serious complications. Hah contended that Robinson "agreed to the need for urgent implant removal to prevent an impending life-threatening infection." Hah explained that he "refunded Defendant's cost for elective cosmetic service" while she remained in his care for the healing process before a "more complex reinsertion implant procedure could be performed 6 to 9 months later[,]" which he planned to do at no charge. The Amended Response contained the same

7

general arguments that the TCPA did not apply and only addressed his prima facie case for breach of contract.

In his affidavit, Hah averred that Robinson and the other patients entered into a contract with him to provide cosmetic services, agreeing they would "refrain from posting, false, defamatory, derogatory, mean-spirited or negative comments or reviews on social media designed to damage my reputation." Hah also stated that he provided services "within the accepted standards of medical care[.]" In his affidavit, Hah also outlined problems that arose post-operatively for Robinson, his recommended course of treatment, and his continued treatment of Robinson during the post-operative period. He further averred that the four patients, including Robinson, "each conspired to post false, defamatory, derogatory, mean-spirted, or negative comments or reviews on social media designed to damage my reputation, as depicted in the attached, which are true and correct copies of each's postings on social media[.]" Finally, he averred that he did not authorize Robinson or the three other defendants to use or publish photos or videos of him, his exam rooms, offices, or other patients.

The first page of screenshots attached to Hah's First Amended Response included a single post from Robinson that stated,

> "Idc who knows anymore at this point & what they have to say about it. This is my body, this is my story & I want people to be aware of what

this so called surgeon is doing to people!!! It's kind of self explanatory when you literally have to watch what you say about these people . . . GUILTY[.] As for me I will speak for myself."

There were also posts from others unrelated to the lawsuit. Additionally, another commenter directed individuals to the "Botched Surgery in Orange Texas" Group and wrote, "When someone has some serious malpractice problems going on, but you can't say anything without being threatened. I guess this is the next best option. I've [sic] you've been botched, this is the place for you." The second page of screenshots attached to Hah's Amended Response showed that Robinson changed the name of the group "Botched Surgery in Orange Texas" to "Locally Failed Cosmetic Surgeries." The second page also included a screenshot from someone identified only as "Group participant" and referred to the patient in the third person stated, "Botched by a cosmetic surgeon in Orange, TX. Implants had to be removed because it was literally fixing to fall out of her skin because he scraped her scar tissue down to paper thin!" The third page of screenshots included post by someone identified as "Group participant" on the "Botched Surgery in Orange Texas" page and noted, "Something has go [sic] to be done soon[.] Another women [sic] has recently been severely injured by this moron[.] Please come forward even if it is anonymous!!" Another "Group participant" post stated, "His wife came on here trying to defend them. I guess they are guilty[.]" The second and third pages of

screenshots also included photographs, including those of medication bottles, with a statement from an unidentified commenter, "That's not even half of the meds they were shoving down my throat every week to do everything they could to prevent something else from happening."

Robinson also filed "Objections to Various Unauthenticated 'Screenshots' and Medical Records." Robinson objected that the screenshots, images, and medical records were not properly authenticated and were inadmissible. Robinson argued that the court and parties were "left to speculate as to where they are from, who published them, and in many instances, it is even difficult to read the writing. Similarly, the apparent medical records are not in any way authenticated or proven up."

The trial court heard the Motions to Dismiss filed by Gage, Chesson, and Robinson during the same hearing. Robinson argued that the TCPA applies, because the lawsuit implicates the exercise of her right to free speech and her right of association. She argued that once the TCPA was triggered, Hah failed to prove a prima facie case for each essential element of his causes of action. Robinson further argued that none of the screenshots were authenticated and that "there has not been any identification of what the alleged defamatory comment is." Robinson and the other patients contended that the pleadings that should be considered were those on

file when they filed their Motions to Dismiss, which specifically claimed the statements made in Facebook Groups were problematic, and the pleadings should not include the complaint in Hah's Response about TikTok posts because it was an attempt to expand the claims. Robinson and the other patients went through each cause of action and explained why Hah failed to make a prima facie case.

At the hearing, Hah sought to offer live testimony to discuss certain videos and authenticate screenshots. Robinson and the other patients objected to any evidence or testimony being taken at the hearing, but the trial court overruled the objection and allowed Hah to testify during the hearing. After the hearing, Robinson and Hah filed letter briefs with the trial court to address the 2019 amendments and whether the TCPA applied. The trial court failed to rule on Robinson's Motion to Dismiss within thirty days from the date of filing, which functioned as a denial by operation of law. *See id.* §§ 27.005(a), 27.008(a). This interlocutory appeal followed. *See id.* §§ 27.008(b), 51.014(a)(12).

## II. Standard of Review

We review a trial court's denial of a TCPA motion to dismiss *de novo. See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018); *Walker v. Hartman*, 516 S.W.3d 71, 79–80 (Tex. App.—Beaumont 2017, pet. denied). We consider the pleadings, evidence we could consider under Rule 166a, and affidavits

11

stating facts on which liability or any defense is based in the light most favorable to the nonmovant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *In re Lipsky*, 460 S.W.3d 579, 587 (Tex. 2015) (orig. proceeding); *see also Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Push Start Indus., LLC v. Hous. Gulf Energy Corp.*, No. 09-19-00290-CV, 2020 WL 7041567, at *3 (Tex. App.—Beaumont Nov. 30, 2020, no pet.) (mem. op.) (citations omitted). We also review *de novo* whether the parties met their burdens of proof under section 27.005 of the TCPA. *Landry's, Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40, 45–46 (Tex. 2021) (citation omitted).

### III. Analysis

### A. TCPA Generally

The TCPA is meant "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002; *see also McLane Champions, LLC v. Hous. Baseball Partners LLC*, No. 21-0641, 2023 WL 4306378, at *4 (Tex. June 30, 2023) (citations omitted). The TCPA instructs courts to liberally construe it to ensure its stated purpose and intent are fully effectuated, but it "does not abrogate or lessen

any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.011(a), (b); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (citation omitted) (noting directive to liberally construe). Under the TCPA, a party may move to dismiss a "legal action" that is "based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.003. The TCPA defines the "[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3); *see Montano v. Cronan*, No. 09-20-00232-CV, 2021 WL 2963801, at *4 (Tex. App.—Beaumont July 15, 2021, no pet.) (mem. op.).

The TCPA "provides a three-step process for the dismissal of a 'legal action' to which it applies." *Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021) (citing *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 691 (Tex. 2018)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)–(d). First, the movant bears the initial burden to show that the "legal action is based on or is in response to[]" the movant's exercise of: "(A) the right of free speech; (B) the right to petition; or (C) the right of association[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1)(A)–(C). If the movant establishes that the nonmovant's claim

13

implicates one of these rights, the burden shifts to the plaintiff to "'establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *Lipsky*, 460 S.W.3d at 587 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)). A "prima facie case" means "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Lipsky*, 460 S.W.3d at 590 (citation omitted). It is the "'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004)). Clear and specific evidence means that the "plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 591. Finally, if the nonmovant establishes their prima facie case, the burden shifts back to the movant to establish each essential element of an affirmative defense by a preponderance of the evidence. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d); *Youngkin v. Hines*, 546 S.W.3d 675, 679–80 (Tex. 2018); *Coleman*, 512 S.W.3d at 899.

**B. Issues One, Two, and Three: TCPA Applicability**

In her first three issues, Robinson argues that the TCPA applies since Hah's lawsuit implicated her right to free speech on a matter of public concern and her right of association. Hah responds that the 2019 TCPA amendments removed "a

good, product, or service in the marketplace" from the definition of "matter of public concern."

The TCPA defines the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). The TCPA further defines "matter of public concern" as:

> . . . a statement or activity regarding:
> (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;
> (B) a matter of political, social, or other interest to the community; or
> (C) a subject of concern to the public.

*Id.* § 27.001(7). The 2019 amendments removed the "good, product, or service in the marketplace" from the definition of "matter of public concern," but the current version of the statute includes "a statement or activity regarding . . . a matter of . . . other interest to the community; or . . . a subject of concern to the public." Act of May 20, 2019, 86th Leg., R.S., ch. 378, § 1, 2019 Tex. Gen. Laws 684, 684 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7)); *see also McLane Champions*, 2023 WL 4306378, at *5 (discussing 2019 amendments and changes to definition of "matter of public concern"). "The phrase 'matter of public concern' commonly refers to matters 'of political, social, or other concern to the community,' and a subject of general interest and of value and concern to the public, as opposed

15

to purely private matters." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 135 (Tex. 2019) (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)); *Montano*, 2021 WL 2963801, at *4. Statements related to a physician's "professional competence and fitness to practice medicine" is "a subject matter that has consistently been recognized by Texas courts as a matter of public concern." *Rockman v. Ob Hospitalist Grp., Inc.*, No. 01-21-00383-CV, 2023 WL 3311548, at *12 (Tex. App.—Houston [1st Dist.] May 9, 2023, no pet. h.) (mem. op.) (citing *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 510 (Tex. 2015)) (other citations omitted). As the Texas Supreme Court recently stated, "under the TCPA, the communication on which the suit is based must have some relevance to the public audience[,]" and "the 'connection' between the communication and the matter of public concern must exist when the communication is made." *McLane Champions*, 2023 WL 4306378, at *7.

The record before us shows that the complained-of posts within the Facebook Groups were directed to a local community where Hah practiced medicine. Hah complained that the titles of the social media groups of "Botched in Orange, Texas" and "Local Failed Cosmetic Surgeries" made clear what the subject matter would be. Her posts, as well as those of the other patients he sued, addressed what she believed to be a negative surgical experience. Other courts have determined that

16

publishing disparaging comments about a medical practice is a communication that constitutes "a matter of public concern." *See San Angelo Cmty. Med. Ctr., LLC v. Leon*, No. 03-19-00229-CV, 2021 WL 1680194, at *7 (Tex. App.—Austin Apr. 29, 2021, pet. filed) (mem. op.) (citations omitted) (concluding disparaging comments about medical practice was a matter of public concern); *Memorial Hermann Health Sys. v. Khalil*, No. 01-16-00512-CV, 2017 WL 3389645, at *5 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017, pet. denied) (op. on reh'g) (mem. op.) (applying language in prior version of statute and concluding that comments about healthcare professional's competence were a matter of public concern); *see also Lippincott*, 462 S.W.3d at 510 (applying prior version of statute and concluding statements about a healthcare professional's competence related to matter of public concern under the TCPA). The fact that people accessed or visited the Facebook groups labeled "Botched Cosmetic Surgeries in Orange Texas" and "Local Failed Cosmetic Surgeries" could indicate the posts were of "interest to the community" or "a subject of concern to the public." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7)(B), (C). Robinson's posts did not simply address private business negotiations in an arms-length transaction, rather they explained what she described as her negative experience with a local surgeon, referenced the alleged substandard quality of a health professional's treatment of patients, were made for reasons that relate to

17

public health and safety, and were made to a public audience. *See Lippincott*, 462 S.W.3d at 509–10. As such, Robinson's posts involved a "matter of public concern," and thus she exercised her right of free speech. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3).

Hah's primary complaint about Robinson seems to be that she posted "mean-spirited or negative comments or reviews on social media." Further, notwithstanding certain enumerated exemptions, the TCPA applies to "a legal action against a person related to the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses." *Id.* § 27.010(b)(2). Although the screenshot does not identify the doctor, if this is a post that Hah attributed to Robinson, his legal action against her was related to the "posting . . . of consumer opinions or commentary[.]" *See id.*

We conclude the TCPA applies to Hah's legal action against Robinson as it involved the exercise of her right to speech and was related to the "posting . . . of consumer opinions or commentary[.]" *See id.* §§ 27.003(a), 27.010(b)(2). We sustain issue one. Based on our resolution of issue one, we need not address issues two and three. *See* Tex. R. App. P. 47.1 (requiring appellate court to hand down a written

18

opinion as brief as practicable but addressing all issues necessary to final disposition of the appeal).

## C. Issues Four through Eight: Prima Facie Case for Each Cause of Action

In issues four through eight, Robinson argues that Hah failed to establish by clear and specific evidence a prima facie case for each of his causes of action. As part of her argument that Hah failed to meet his prima facie burden, Robinson contends that the trial court should not have permitted live testimony at the hearing. Having concluded that the TCPA applies to Hah's legal action against Robinson, we now turn to whether Hah met his burden to establish a prima facie case for each essential element of his causes of action by clear and specific evidence. *See Lipsky*, 460 S.W.3d at 587; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

### 1. Evidentiary Matters: Hearing and Live Testimony

We first address the scope of the evidence we are reviewing since Robinson challenged Hah's live testimony at the hearing. Prior to 2019, the courts of appeals were split regarding whether live testimony could be considered during a TCPA motion to dismiss hearing. *Compare Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 707 (Tex. App.—Amarillo 2018, pet. denied) ("In addition to consideration of the pleadings and affidavits, a trial court may, but is not required to, hear live testimony and receive the submission of documentary evidence."), *with Quintanilla*

*v. West*, 534 S.W.3d 34, 42 (Tex. App.—San Antonio 2017), *rev'd on other grounds*, 573 S.W.3d 237 (Tex. 2019) (explaining that "[t]he trial court does not hear live testimony" when considering a TCPA motion to dismiss); *see also Heavenly Homes of S. Tex., LLC v. Infinity Custom Constr., LLC*, No. 13-21-00298-CV, 2022 WL 2069232, at *7 (Tex. App.—Corpus Christi-Edinburg June 9, 2022, no pet.) (mem. op.) (discussing split in authority regarding live hearing testimony under prior TCPA version). The 2019 amendments authorized consideration of evidence similar to that considered in a summary-judgment context, and section 27.006(a) currently states:

> In determining whether a legal action is subject to or should be dismissed under this chapter, the court shall consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based.

Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). Rule 166a(c) expressly states that "[n]o oral testimony shall be received at the hearing." Tex. R. Civ. P. 166a(c). The Texas Supreme Court has explained that Rule 166a allows only certain forms of evidence, and "oral testimony cannot be adduced in support of or opposition to a motion for summary judgment[.]" *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (per curiam) (citing Tex. R. Civ. P. 166a(c)). Further, live testimony is not included within the enumerated evidence in section 27.006. *See*

20

Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). Accordingly, like our sister courts, we conclude the TCPA as amended in 2019, like Rule 166a, does not permit the consideration of live testimony on the merits of a TCPA motion to dismiss. *See Garcia v. Semler*, 663 S.W.3d 270, 277 (Tex. App.—Dallas 2022, no pet.); *Heavenly Homes*, 2022 WL 2069232, at *7; *Kadow v. Grauerholz*, No. 02-20-00044-CV, 2021 WL 733302, at *4 (Tex. App.—Fort Worth Feb. 25, 2021, no pet.) (mem. op.). Therefore, because the appellants preserved their right to complain that the trial court erred in considering oral testimony in a hearing on a TCPA motion to dismiss, we will not consider the oral testimony the trial court admitted at the hearing in our analysis.

## 2. Issue Four: Business Disparagement

In issue four, Robinson asserts that Hah failed to meet his burden of establishing a prima facie case for his business disparagement claim. "The torts of defamation and business disparagement are alike in that 'both involve harm from the publication of false information.'" *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020) (quoting *Lipsky*, 460 S.W.3d at 591). A notable distinction is that "[d]efamation serves to protect one's interest in character and reputation, whereas disparagement protects economic interests by providing a remedy for pecuniary losses from slurs affecting the marketability of

goods and services." *Id.* (citation omitted). "The publication of a disparaging statement concerning the product of another is actionable when (1) the statement is false, (2) published with malice, (3) with the intent that the publication causes pecuniary loss or the reasonable recognition that it will, and (4) pecuniary loss does in fact result." *Id.* at 417 (citing *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)).

In examining the pleadings and evidence the trial court could consider under Rule 166a, we note that Hah identifies no statements in his Original Petition that Robinson made as the basis of his business disparagement claim. In his Response and Amended Response to Robinson's TCPA Motion to Dismiss, while he attached screenshots and photographs, Hah does not address the essential elements of his business disparagement claim or how any of Robinson's purported statements on social media supported that cause of action. Rather, he focuses solely on his breach of contract cause of action.

Hah complained in his Response and Amended Response that Robinson did not offer expert testimony to opine that Hah acted below the standard of care. If Robinson had filed a medical malpractice claim, we agree Robinson would be required to comply with the Texas Medical Liability Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001–.507. However, Robinson has not sued Hah for medical

22

malpractice in this matter. Rather, Hah sued Robinson for the claims as outlined above. As we have explained above, the TCPA applies, and Hah has the burden to show a prima facie case for his business disparagement cause of action by clear and specific evidence. *See id.* § 27.005(b)–(c); *Lipsky*, 460 S.W.3d at 590–92. Hah has failed to allege or state how he suffered a pecuniary loss in his Responses or provide any evidence of a pecuniary loss. *See Innovative Block*, 603 S.W.3d at 417 (including resulting pecuniary loss as a requisite element of business disparagement). Hah failed to establish a sufficient causal connection between any challenged statement Robinson made and any particular loss. *See Landry's, Inc.*, 631 S.W.3d at 54 (noting same in the context of business disparagement claim and concluding party failed to meet its burden of establishing prima facie case). Since business disparagement is solely concerned with economic harm, "proof of special damages is 'a fundamental element of the tort.'" *Innovative Block*, 603 S.W.3d at 417 (quoting *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex. 2014)). His affidavit did not state any specific damages that he sustained because of Robinson's postings. *See Lipsky*, 460 S.W.3d at 592–93 (concluding that general averments that non-movant "suffered direct pecuniary and economic losses" absent facts illustrating how defendant's remarks caused the losses were insufficient to meet the TCPA

23

requirement of clear and specific evidence of damages); *Camp v. Patterson*, No. 03-16-00733-CV, 2017 WL 3378904, at *7 (Tex. App.—Austin 2017).

We conclude that Hah failed to establish a prima facie case of each essential element of his business disparagement claim by clear and specific evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *Innovative Block*, 603 S.W.3d at 417; *Lipsky*, 460 S.W.3d at 592–93. We sustain issue four.

### 3. Issue Five: Defamation

Robinson argues in issue five that Hah failed to meet his burden to establish a prima facie case for his defamation claim. For a defamation claim, a plaintiff must show (1) the defendant published a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the required degree of fault, at least amounting to negligence, and (4) in some cases, damages. *Innovative Block*, 603 S.W.3d at 417 (citing *Lipsky*, 460 S.W.3d at 593). "A defamatory statement is one that 'tends [] to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 559 (AM. L. INST. 1977)) (other citation omitted).

On appeal, Hah contends for the first time that Robinson's statements constituted defamation *per se* and as such Hah had no obligation to show proof of

24

damages. A party seeking to recover on a defamation claim must plead and prove damages, unless the defamatory statements are defamatory *per se. Lipsky*, 460 S.W.3d at 593. "A statement constitutes defamation *per se* if it 'injures a person in his office, profession, or occupation.'" *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013) (quoting *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,* 219 S.W.3d 563, 581 (Tex. App.–Austin 2007, pet. denied)). "Historically in Texas, defamation *per se* claims allow the jury to presume the existence of general damages without proof of actual injury." *Id.* at 65 (citations omitted). "In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Lipsky*, 460 S.W.3d at 591. Defamation *per se* refers to statements that are so obviously harmful that general damages may be presumed. *Id.* Whether a statement is defamatory *per se* is generally a question of law. *See id.* at 596.

Like his business disparagement claim, Hah failed to substantively address the essential elements of his defamation cause of action in his Responses to Robinson's TCPA Motion to Dismiss. While he generally attached screenshots of Robinson's social media posts to his Response, he did not explain which of these

25

statements were defamatory, the defamatory nature of the statements, or specify how Robinson's statements damaged him. *See id.*

More importantly, in the trial court, Hah did not raise or argue in his responses or in his affidavit that any particular statements constitute defamation *per se*. Rather, in his Responses, Hah confined his argument to his breach of contract cause of action and asserted he "has met his burden to establish by clear and specific evidence a prima facie case for each element of his breach of contract claim against Defendant that Defendant did not attempt to establish a valid defense to the claim." However, "[T]he TCPA requires that on motion the plaintiff present 'clear and specific evidence' of 'each essential element[,]'" which Hah failed to do here. *See id.* at 590. While it is generally true that defamation *per se* does not require proof of damages, in the absence of "pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they were damaged," Hah cannot avoid dismissal. *See id.* at 591; *see also Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017). We conclude Hah failed to establish a prima facie case for each element of his defamation claim by clear and specific evidence. *See Bedford*, 520 S.W.3d at 904; *Lipsky*, 460 S.W.3d at 591; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). We sustain issue five.

**4. Issue Six: Invasion of Privacy**

In issue six, Robinson argues that Hah failed to meet his burden of establishing a prima facie case for each element of his invasion of privacy claim. Hah counters that "a fact issue exists as to whether Appellee suffered direct damages as a result thereof by way of Appellant linking his image to the defamatory posts complained of." Hah also contends on appeal that "'[i]nvasion of privacy' can include 'misappropriation' that involves using another[] person's name or likeness without their permission."

In Texas, the recognized types of invasion of privacy include: (1) intrusion upon seclusion or solitude or into one's private affairs; (2) public disclosure of embarrassing private facts; and (3) wrongful appropriation of name or likeness. *See Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994) (outlining cases recognizing each type of privacy right); *Doggett v. Travis Law Firm, P.C.*, 555 S.W.3d 127, 130 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). "Name misappropriation is a species of invasion of privacy, and Texas law applies a very restrictive interpretation of the tort." *Cardiovascular Provider Res. Inc. v. Gottlich*, No. 05-13-01763-CV, 2015 WL 4914725, at *3 (Tex. App.—Dallas Aug. 18, 2015, pet. denied) (mem. op.) (citation omitted). Elements of a misappropriation claim are: 1) the defendant appropriated the plaintiff's name or likeness for the value associated

with it, and not in an incidental manner or for a newsworthy purpose; 2) the plaintiff can be identified from the publication; and 3) there was some advantage or benefit to the defendant. *Watson v. Talia Heights, LLC*, 566 S.W.3d 326, 329 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citations omitted). Texas law protects the value associated with the name, rather than the name *per se*. *See id.* at 330; *see also Express One Int'l Inc. v. Steinbeck*, 53 S.W.3d 895, 900 (Tex. App.—Dallas 2001, no pet.) (citation omitted).

As explained in issues five and six, the question is whether Hah presented clear and specific evidence of each essential element for his invasion of privacy claim–not whether a fact issue exists. *See Lipsky*, 460 S.W.3d at 590. Hah likewise failed to address the essential elements of an invasion of privacy misappropriation claim. Other than summarily averring in his affidavit and Responses to the Motion to Dismiss that he did not authorize Robinson to use or publish his likeness, photographs, or videos of him, his offices, or other patients, Hah did not explain how his evidence satisfied each of the requisite elements of this claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Although the screenshots attached to Hah's Responses showed that Robinson or the other patients may have used Hah's image, Hah failed to show that Robinson appropriated his image to take advantage of the value associated with Hah's name or image. *See, e.g., United Locating Services, LLC*

28

*v. Fobbs*, 619 S.W.3d 863, 872–73 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (explaining that plaintiffs failed to show the value associated with their names and concluding they failed to establish "by clear and specific evidence a prima facie case for the first essential element of their Name Appropriation Claims"); *see also Watson*, 566 S.W.3d at 331 (explaining in no evidence summary-judgment context that plaintiff was required "to produce evidence showing that his name was misappropriated to take advantage of his reputation, prestige, or other values[]"). Hah therefore has also failed to establish a prima facie case for each requisite element of his misappropriation invasion of privacy claim by clear and specific evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *Watson*, 566 S.W.3d at 329; *see also Fobbs*, 619 S.W.3d at 872–73. We sustain issue six.

**5. Issue Seven: Breach of Contract**

In issue seven, Robinson argues that Hah failed to make a prima facie case for his breach of contract claim by clear and specific evidence. Robinson specifically challenges the contract's validity and contends that Hah failed to provide evidence of damages proximately caused by Robinson's breach.

Once Robinson showed the TCPA applied to Hah's claim, Hah needed to establish "by clear and specific evidence a prima facie case for each essential element" of his alleged breach of contract claim. *See* Tex. Civ. Prac. & Rem. Code

Ann. § 27.005(c); *S & S Emergency Training Solutions, Inc. v. Elliot*, 564 S.W.3d 843, 847 (Tex. 2018) (noting second step of analysis after TCPA applicability is whether non-movant established by clear and specific evidence a prima facie case of each essential element of its breach-of-contract claim). The essential elements of a breach of contract cause of action are: "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (citations omitted).

Assuming without deciding the "Contract of Reasonable Expectations" Robinson signed constituted a valid contract, Hah must still establish damages caused by Robinson's breach. *See id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Hah pleaded in his Petition that as a result of Robinson's breach, he has "suffered and continues to suffer actual damages" and generally averred in his affidavit that Robinson posted "false, defamatory, derogatory or mean-spirited or negative comments or reviews on social media designed to damage my reputation[.]" Hah's pleading and affidavit alleging he has been damaged is conclusory and not "clear and specific evidence" of particularized harm. *See Lipsky*, 460 S.W.3d at 592–

30

93 (explaining that general averment of economic losses failed to satisfy TCPA's minimum requirements); *Gensetix, Inc. v. Baylor Coll. of Med.*, 616 S.W.3d 630, 647 (Tex. App.—Houston [14th Dist.] 2020, pet. dism'd) (noting same). Since Hah failed to provide "clear and specific evidence" of damages, Hah failed to establish a prima facie case for his breach of contract claim. *See Lipsky*, 460 S.W.3d at 590, 592–93; *Gensetix, Inc.*, 616 S.W.3d at 647; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). We sustain issue seven.

## 6. Issue Eight: Injunctive Relief

In issue eight, Robinson contends that Hah cannot establish his entitlement to injunctive relief and has not attempted to. She also contends that it is "linked to one or more causes of action[,]" which all fail, so the claim for injunctive relief fails. "[T]he TCPA does not allow a request for injunctive relief to be separately challenged when it is linked to a cause of action." *See Cavin v. Abbott*, 613 S.W.3d 168, 171 (Tex. App.—Austin 2020, pet. denied) (citations omitted). Hah concedes in his brief that his request for injunctive relief "is not an independent cause of action but is rather ancillary to Appellant's other claims." Having determined he failed to make a prima facie case for his other claims, we decline to address this separately from his other causes of action. *See id.*; *see also* Tex. R. App. P. 47.1.

31

**D. Issues Nine through Twelve: Affirmative Defenses**

In issues nine through twelve, Robinson asserts she established affirmative defenses to Hah's claims. Considering our conclusion that Hah failed to meet his burden of establishing a prima facie case for the essential elements of each of his causes of action by clear and specific evidence, the burden did not shift back to Robinson to establish affirmative defenses. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)–(d); *Youngkin*, 546 S.W.3d at 679–80 (discussing TCPA's burden shifting); *Coleman*, 512 S.W.3d at 899 (same). Accordingly, we need not address Robinson's remaining issues. *See* Tex. R. App. P. 47.1.

## IV. Conclusion

To summarize, we conclude that Robinson met her initial burden to show that Hah's claims against her fall within the TCPA. Therefore, the burden shifted to Hah to establish by clear and specific evidence a prima facie case for each essential element of his claims. Hah failed to establish a prima facie case for his defamation, business disparagement, invasion of privacy, and breach of contract claims, and his claim for injunctive relief was derivative of those claims. We hold the trial court erred by denying Robinson's TCPA Motion to Dismiss. We reverse the trial court's denial of Robinson's TCPA Motion to Dismiss, remand the case to the trial court so that it can enter a judgment dismissing Hah's defamation, business disparagement,

invasion of privacy, breach of contract, and injunctive relief claims, and instruct the trial court to award Robinson reasonable attorney's fees, costs, and other expenses incurred as allowed under the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.005, 27.009(a); *River Plantation Cmty. Improvement Ass'n v. River Plantation Props., LLC*, No. 09-17-00451-CV, 2018 WL 4120252, at *7 (Tex. App.— Beaumont Aug. 30, 2018, no pet.) (mem. op.) (remanding for entry of judgment dismissing causes of action and award of attorney's fees).

REVERSED AND REMANDED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on June 16, 2023
Opinion Delivered August 10, 2023

Before Golemon, C.J., Johnson and Wright, JJ.